# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2013AP1619-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Paul A. Strouse, Attorney at Law: |
| | Office of Lawyer Regulation, Complainant-Respondent, v. Paul A. Strouse, Respondent-Appellant. |

---

DISCIPLINARY PROCEEDINGS AGAINST STROUSE

---

| | |
|---|---|
| OPINION FILED: | July 15, 2015 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | April 16, 2015 |

---

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

---

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | BRADLEY, J. did not participate. |

---

ATTORNEYS:

For the respondent-appellant, there were briefs by *Dean R. Dietrich* and *Ruder Ware L.L.S.C.*, Wausau, and oral argument by *Dean R. Dietrich*.

For the complainant-respondent, there was a brief by *James C. Reiher* and *The Schroder Group, S.C.*, Waukesha, and oral argument by *James C. Reiher*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2013AP1619-D

STATE OF WISCONSIN          :          IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Paul A. Strouse, Attorney at Law:**

**Office of Lawyer Regulation,**

           **Complainant-Respondent,**

     **v.**

**Paul A. Strouse,**

           **Respondent-Appellant.**

**FILED**

**JUL 15, 2015**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1  PER CURIAM.  Attorney Paul A. Strouse has appealed a report filed by Referee Kevin L. Ferguson, concluding that he engaged in professional misconduct and recommending that this court suspend Attorney Strouse's license to practice law for 60 days and impose full costs, which total $67,562.12 as of May 6, 2015.

¶2  Having considered the referee's report and the parties' briefs and oral argument on appeal, we conclude that

the referee's findings of fact are supported by satisfactory and convincing evidence and we accept his conclusions of law, with one exception:  we dismiss the allegation that Attorney Strouse violated Supreme Court Rule (SCR) 20:8.4(c).  We agree that Attorney Strouse's misconduct warrants the suspension of his license to practice law for 60 days and we impose the full costs of this proceeding.

¶3  Attorney Strouse was admitted to practice law in Wisconsin in 1991.  He practices in Milwaukee, primarily representing debtors in bankruptcy proceedings.  Attorney Strouse has received two previous public reprimands for misconduct that occurred between 2007 and 2009.  Public Reprimand of Paul A. Strouse, 2010-2; Public Reprimand of Paul A. Strouse, 2011-5.  In addition, during the pendency of this proceeding, Attorney Strouse received a third public reprimand. Public Reprimand of Paul Strouse, 2015-6.

¶4  The Office of Lawyer Regulation (OLR) filed the complaint giving rise to this proceeding on July 22, 2013, alleging eights counts of professional misconduct committed in four separate client matters.  Attorney Strouse filed an answer and Referee Ferguson was appointed.  Attorney Strouse amended his answer, and discovery and pre-hearing motions followed.

¶5  Shortly before the evidentiary hearing, Attorney Strouse entered into a stipulation with the OLR to withdraw his amended answer and allow entry of judgment regarding Counts One and Two, pertaining to the matter of F.E.  Subsequently, the

parties entered into a stipulation of facts, including 59 exhibits.

¶6 In June 2014, the referee commenced a four-day evidentiary hearing which included extensive testimony, more than 100 exhibits, and more than 150 pages of briefing. The referee issued his report and recommendation on October 30, 2014. This appeal followed. The court heard oral argument on April 16, 2015.

¶7 When reviewing a referee's report and recommendation, the referee, as the finder of fact, is the ultimate arbiter of the credibility of the witnesses. In re Disciplinary Proceedings Against Alia, 2006 WI 12, ¶71, 288 Wis. 2d 299, 709 N.W.2d 399. We affirm the referee's findings of fact unless they are clearly erroneous. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law de novo. Alia, 2006 WI 12, ¶39. We determine the appropriate level of discipline to impose given the particular facts of each case, independent of the referee's recommendation, but benefitting from it. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶8 Each of the client matters raised in the OLR complaint will be addressed seriatim.

Matter of F.E.

¶9 Attorney Strouse stipulated that he committed the misconduct alleged in connection with his representation of F.E.

3

The facts will be summarized because the admitted misconduct is relevant to our assessment of appropriate discipline.

¶10 F.E. purchased a gas station/convenience store in Milwaukee and, as part of that transaction, F.E. signed a Commercial Security Agreement that gave Ridgestone Bank (Ridgestone) a security interest in, as relevant here, certain fuel monitoring equipment. In April 2009, Ridgestone started foreclosure proceedings on the gas station, and obtained a default judgment in June 2009. Also in June 2009, F.E. hired Attorney Strouse. Ridgestone's lawyer began asking Attorney Strouse to arrange for F.E. to return the fuel monitoring equipment. Meanwhile, Attorney Strouse filed a Chapter 7 bankruptcy petition on behalf of F.E. and, at some point, F.E. delivered the fuel monitoring equipment to Attorney Strouse's office. Attorney Strouse did not give F.E. a receipt.

¶11 On November 20, 2009, after Attorney Strouse had failed to respond to repeated requests for the return of the equipment, the gas station's receiver went unannounced to Attorney Strouse's office to collect the fuel monitoring equipment. Attorney Strouse admitted the equipment had been stolen or lost.

¶12 The complaint alleged and Attorney Strouse later stipulated that, by failing to clearly identify and appropriately safeguard the fuel monitoring equipment left in his possession, notwithstanding his receipt of written notice of Ridgestone's interest in the property, Attorney Strouse violated SCR 20:1.15(b)(6), which provides, in pertinent part, that

4

"[t]he lawyer shall clearly identify and appropriately safeguard other property of a client or 3rd party" (Count One).

¶13 The complaint alleged further and Attorney Strouse stipulated that, by failing to provide a signed, written receipt to F.E. describing the fuel monitoring equipment he had taken into custody and the date of receipt, Attorney Strouse violated SCR 20:1.15(j)(8)b., which provides that "[u]pon taking custody, as a fiduciary, of any tangible personal property or securities in bearer form, the lawyer shall provide to the previous custodian a signed receipt, with a description of the property, and the date of receipt" (Count Two).

¶14 We turn to the disputed aspects of this disciplinary matter.

Matter of G.B.

¶15 Attorney Strouse appeals the referee's conclusion that he committed two counts of misconduct in his representation of G.B. In November 2009, G.B. and his partner, C.W., met with Attorney Strouse to discuss Chapter 7 bankruptcy proceedings. Attorney Strouse quoted each a fee of approximately $900 for their respective bankruptcy proceedings, consisting of $300 in filing fees and $600 in legal fees. It is undisputed that the initial fee quote was less than $1,000.

¶16 On February 3, 2010, they met again and G.B. offered to provide website design services in exchange for the $600 attorney fee. The OLR alleged that Attorney Strouse orally agreed to G.B.'s suggestion. G.B. claimed he subsequently spent some 15 hours on the website project. Attorney Strouse disputes

this claim, stating that he rejected G.B.'s suggestion because a longtime friend did his website design. He claims that, instead, he renewed his offer for a "special rate" of $975 conditioned upon receiving $650 up front before filing the bankruptcy petition. G.B. gave Attorney Strouse $300 for the bankruptcy filing fee that day.

¶17 On March 6, 2010, G.B. met with Attorney Strouse's law associate to review and sign bankruptcy schedules for his bankruptcy petition. The schedules included Form 2016(b), which stated that Attorney Strouse had agreed to accept $0.00 in attorney's fees and that no balance was due. The form also contained the following certification: "I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding."

¶18 G.B. stated that he interpreted the $0 as evidence of the agreement to exchange web design for legal fees. Attorney Strouse maintains that the $0 figure was an error; he stated that the bankruptcy petition had to be filed quickly because a small claims action had just been filed against G.B.

¶19 On March 8, 2010, Attorney Strouse filed G.B.'s bankruptcy petition and sent G.B. a letter advising him that the bankruptcy petition had been filed. This letter did not request any additional fee.

¶20 On or about March 15, 2010, Attorney Strouse and G.B. spoke by telephone. The substance of that conversation is hotly contested. G.B. claimed that Attorney Strouse abruptly stated

6

that he no longer wanted G.B. to work on the website and demanded $750, increasing the total cost of representation to $1,050. Attorney Strouse claims that G.B. realized that most of the work on his bankruptcy case was done and didn't intend to pay his balance. Attorney Strouse acknowledged that he "got angry" and demanded payment.

¶21 On March 17, 2010, Attorney Strouse sent G.B. an invoice for $1,050, reflecting a $300 payment received and a new balance due of $750. A series of oral demands for payment and refusals ensued. G.B. terminated Attorney Strouse's representation and Attorney Strouse withdrew as counsel for G.B.'s bankruptcy case.

¶22 On March 26, 2010, G.B. filed a small claims action against Attorney Strouse in Kenosha County, seeking a refund of his $300 filing fee, and alleging that Attorney Strouse reneged on a barter for services agreement. On July 21, 2010, G.B. prevailed at a bench trial. The transcript from this small claims proceeding reflects that the circuit court found that Attorney Strouse reneged on a barter agreement for services. The circuit court deemed significant the $0 in fees claimed in the bankruptcy disclosure. The circuit court awarded G.B. $459.50.

¶23 Turning to this disciplinary proceeding, the referee concluded that "Attorney Strouse failed to provide to [G.B.] a written fee agreement setting forth the scope of the representation and the basis or rate of the fees or expenses for representation" and that "Attorney Strouse reneged on an

7

agreement to provide legal services to [G.B.] for $900.00 and subsequently failed to abide by the agreement when he increased the fee to $1,050.00 without his client's consent." The referee thus concluded that Attorney Strouse violated SCR 20:1.5(b)(1) (Count Three) and SCR 20:8.4(c) (Count Four) in his representation of G.B.

¶24 We first consider whether Attorney Strouse violated SCR 20:1.5(b)(1). SCR 20:1.5(b)(l) provides:

> The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client in writing, before or within a reasonable time after commencing the representation . . . . If it is reasonably foreseeable that the total cost of the representation to the client, including attorney's fees, will be $1,000 or less, the communication may be oral or in writing. Any changes in the basis or rate of the fee or expenses shall also be communicated in writing to the client.

¶25 The American Bar Association Comment to SCR 20:1.5(b)(1) reminds us of the reason for this rule:

> In a new client-lawyer relationship, however, an understanding as to fees and expenses must be promptly established. Generally, it is desirable to furnish the client with at least a simple memorandum or copy of the lawyer's customary fee arrangements that states the general nature of the legal services to be provided, the basis, rate or total amount of the fee and whether and to what extent the client will be responsible for any costs, expenses or disbursements in the course of the representation. A written statement concerning the terms of the engagement reduces the possibility of misunderstanding.

¶26 Attorney Strouse takes issue with the referee's statement that he "failed to provide to [G.B.] a written fee

8

agreement." Attorney Strouse correctly notes that the term "written fee agreement" does not appear in the rule and that no written fee communication is required when it is foreseeable that the total cost of representation will be $1,000 or less.

¶27 However, our rule requires that certain information with respect to fees and expenses be communicated to the client, whether orally or in writing. The rule expressly requires that any changes in the basis or rate of the fee or expenses *shall* also be communicated in writing to the client. The first paragraph of the Wisconsin Committee Comment to SCR 20:1.5 observes that "communication to the client through the billing statement should clearly indicate that a change in the basis or rate of the fee or expenses has occurred along with an indication of the new basis or rate of the fee or expenses." This was not done.

¶28 The referee found that "Strouse *unilaterally* set [G.B.'s] account at his regular flat rate of $1,050 and sent the Statement . . . to [G.B.] because he was angry with [G.B.]" (emphasis added). Attorney Strouse sent a brief cover letter and a cursory billing statement that makes absolutely no mention of any change in the fee charged to G.B., much less setting forth the reason for the change. Simply put, the cursory billing statement submitted to G.B., unilaterally increasing the fee for legal services in the wake of an acrimonious telephone call, does not satisfy the requirements of SCR 20:1.5(b). Notwithstanding the imprecise language in the referee's conclusion regarding a "written fee agreement," the record

contains clear, satisfactory, and convincing evidence that Attorney Strouse failed to satisfy the requirements of SCR 20:1.5(b)(1).

¶29 We next consider Attorney Strouse's appeal from the referee's conclusion that he violated SCR 20:8.4(c) in his representation of G.B.   SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." Attorney Strouse contends that the referee failed to make necessary or sufficient credibility determinations to support his findings and conclusions on this point.   We agree.   Our review would be simpler had the referee made more explicit findings to support his conclusion that Attorney Strouse's conduct constituted fraud, deceit, or misrepresentation in violation of SCR 20:8.4(c).

¶30 The OLR alleged that, by reneging on an alleged agreement to provide legal services to G.B. in exchange for website design services or, in the alternative, by agreeing to provide legal services for $900 and subsequently failing to abide by that agreement, unilaterally increasing the fee to $1,050 without his client's consent, Attorney Strouse violated SCR 20:8.4(c).

¶31 The referee made a factual finding that the small claims court "found in favor of [G.B.] and awarded [G.B.] a judgment of $300.00 plus costs against Strouse to be paid [G.B.]" and that the court "concluded that there was an agreement between [G.B.] and Strouse for website design services

10

in lieu of bankruptcy legal fees [when he stated]: 'I'm satisfied there was an agreement. You were taking it out in work.'" However, the referee's mere recognition of the prior small claims proceeding is insufficient, alone, to sustain a violation of SCR 20:8.4(c) under these facts, particularly in view of the lower burden of proof applicable in small claims proceedings. The referee did find that Attorney Strouse "reneged" on an agreement with G.B., but the precise nature of that agreement remains unclear and the circumstances as reflected in the referee's findings do not establish that Attorney Strouse's conduct rose to the level of misrepresentation in violation of SCR 20:8.4(c). This court will not make a finding that the referee could have made but did not. See In re Disciplinary Proceedings Against Wood, 122 Wis. 2d 610, 363 N.W.2d 220 (1985); see also In re Disciplinary Proceedings Against Swartwout, 116 Wis. 2d 380, 342 N.W.2d 406 (1984). We conclude that the referee's findings do not support the conclusion that Attorney Strouse's conduct constituted misrepresentation in violation of SCR 20:8.4(c) and we dismiss this charge.

Matter of Y.W.

¶32 Attorney Strouse appeals Referee Ferguson's determination that Attorney Strouse violated SCR 20:1.5(b)(1) in his representation of Y.W. In February 2010, Attorney Strouse agreed to represent Y.W. in a Chapter 7 bankruptcy matter and, on February 4, 2010, Y.W. paid Attorney Strouse $100 to start

11

the proceeding. The receipt reflects payment but does not state a balance due.

¶33 On April 3, 2010, Y.W. paid an additional $300. The receipt reflects a balance due of $650.

¶34 On April 15, 2010, Attorney Strouse filed Y.W.'s Chapter 7 bankruptcy petition, without schedules. He sent a billing statement to Y.W. dated April 15, 2010, reflecting an opening balance of $1,050 with a balance due of $650.[1]

¶35 On April 22, 2010, Attorney Strouse met with Y.W. and told her she owed him an additional $700. Attorney Strouse later told the OLR that Y.W. agreed to pay the extra $50, a claim Y.W. disputes. Attorney Strouse agreed to accept two post-dated checks, each in the amount of $350, as payment, now reflecting a total cost of representation of $1,100.

¶36 The same day, Attorney Strouse filed the requisite bankruptcy schedules with the bankruptcy court and certified to the court that he was charging Y.W. $750 for legal services, of which $50 had been paid, with a balance due of $700.

¶37 Y.W. filed a grievance claiming that Attorney Strouse agreed to represent her for a fee of $500. Attorney Strouse denied that he would have agreed to a $500 fee.

---

[1] Attorney Strouse paid $300 for the bankruptcy filing fee and $28 for the purchase of three credit reports from the $400 he had received from Y.W.

¶38 The referee found that "the testimony of [Y.W.] on the total amount of fees was not credible," but concluded that Attorney Strouse violated SCR 20:1.5(b)(1) (Count Five).

¶39 On appeal, Attorney Strouse maintains that the April 15 billing statement sent to Y.W. satisfies the requirements of SCR 20:1.5(b)(1). We disagree.

¶40 The referee found that Attorney Strouse agreed to represent Y.W. for $1,050, consistent with his standard fee for a Chapter 7 bankruptcy proceeding, and that Attorney Strouse did not "provide [Y.W.] with a written document stating the scope of the representation to be provided and the basis of the fee of $1,050." The evidence supports the referee's findings and we accept them.

¶41 The barebones billing statement sent to Y.W. does not satisfy the requirements of SCR 20:1.5(b)(1), which required Attorney Strouse to provide to Y.W., in writing, the scope of the representation and the basis or rate of the fee. Nor, to the extent there was a change in the fee from $1,050 to $1,100, does the billing statement adequately denote the change in the basis or rate of the fee or expenses. We agree with the referee's conclusion that Attorney Strouse violated SCR 20:1.5(b)(1) in his representation of Y.W.

<u>E.J. and S.J.</u>

¶42 Attorney Strouse next appeals the referee's conclusion that Attorney Strouse violated SCR 20:1.2(a) (Scope of Representation) and SCRs 20:1.4(a)(2), 20:1.4(a)(4), and 20:1.4(b) (Communication) in his representation of E.J. and S.J.

13

He contends that Referee Ferguson fails to make necessary credibility determinations to support his findings and conclusions. We disagree.

¶43 In 2009, E.J. and S.J. retained Attorney Strouse to file a Chapter 7 bankruptcy proceeding for them. The parties disagree as to whether Attorney Strouse also agreed to represent them in an adversary proceeding involving the discharge of E.J.'s student loans. E.J. and S.J. claim there was such an agreement. Attorney Strouse denies it; he claims they had a limited agreement whereby he would look into the issue of potentially representing them on the discharge of the student loan and evaluate the likelihood of success of such a claim.

¶44 On August 1, 2009, E.J. and S.J. paid Attorney Strouse $750. No written fee agreement was executed. It is undisputed that Attorney Strouse filed a Chapter 7 bankruptcy petition on the clients' behalf, which proceeded without incident. In November 2009, when E.J. and S.J. sent Attorney Strouse a final check for his services, however, they inquired about the student loan discharge. In early January 2010, E.J. and S.J. hand-delivered to Attorney Strouse's office a letter expressing concern about Attorney Strouse's failure to return their calls or communicate about the bankruptcy matter and the student loan issue. Attorney Strouse did not respond.

¶45 On January 31, 2010, E.J. and S.J. again wrote to Attorney Strouse about the student loan issue, requesting information regarding a hearing date. Attorney Strouse did not respond. On February 4, 2010, E.J. sent another letter to

14

Attorney Strouse regarding the student loan issue. Attorney Strouse did not respond.

¶46 Finally, E.J. and S.J. claim that on April 8, 2010, they met with Attorney Strouse to discuss the student loan matter. At this meeting, they say Attorney Strouse admitted that he missed a relevant filing date and returned their file. Attorney Strouse refutes this claim.

¶47 During the ensuing disciplinary proceeding, Attorney Strouse told the OLR that he had prepared and delivered a legal research memorandum to E.J. and S.J. addressing the student loan issue. E.J. and S.J. deny receiving any such memorandum and deny that Attorney Strouse discussed the contents of such a memo with them.

¶48 The referee concluded that, by failing to consult with E.J. and S.J. regarding the means by which the objectives of the representation were to be pursued, including the discharge of student loan debt, Attorney Strouse violated SCR 20:1.2(a)[2] and SCR 20:1.4(a)(2)[3] (Count Six). In addition, the referee concluded that, by failing to explain to E.J. and S.J. the issues associated with the discharge of student loan debt,

---

[2] SCR 20:1.2(a) provides, in relevant part, "Subject to pars. (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued."

[3] SCR 20:1.4(a)(2) provides that a lawyer shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished."

including the cost to pursue an adversary proceeding, the likelihood of success of such efforts, and the results of his research into the viability of such a claim, Attorney Strouse failed to explain matters sufficiently to enable E.J. and S.J. to make informed decisions regarding the representation. In so doing, Attorney Strouse violated SCR 20:1.4(b)[4] (Count Seven). In addition, the referee concluded that, by failing to respond to the multiple requests for information from E.J. and S.J., including letters dated November 7, 2009, January 4, 2010, January 31, 2010, and February 4, 2010, Attorney Strouse violated SCR 20:1.4(a)(4)[5] (Count Eight).

¶49 Attorney Strouse appeals, claiming, inter alia, that the referee's findings are insufficient to support these charges and that his credibility determinations are clearly erroneous.

¶50 The referee found that that E.J. and S.J. sought Attorney Strouse's representation in filing for Chapter 7 bankruptcy and to discharge E.J.'s student loan debt. The referee found that "[b]oth [E.J. and S.J.] offered credible testimony there was such an agreement." The referee explicitly stated that, "[h]aving weighed the contradictory testimony and evidence on the issue of the scope of representation, *I did not find the testimony of Strouse to be credible*." (Emphasis

---

[4] SCR 20:1.4(b) provides that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[5] SCR 20:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests by the client for information."

added.)  The referee found that Attorney Strouse failed to respond to E.J.'s and S.J.'s repeated requests for information related to the discharge of the student loan.  The referee found that Attorney Strouse never consulted with E.J. and S.J. concerning the means by which the objectives of his representation were to be pursued to secure the discharge of the student loan.  The referee found that Attorney Strouse never explained to E.J. and S.J. the issues associated with the discharge of the student loan debt, the costs of pursuing any adversary proceedings, the likelihood of success, or the results of any research he had done.  The referee found that Attorney Strouse never explained matters sufficiently to E.J. and S.J. to enable them to make informed decisions regarding the student loan discharge.  The evidence supports these findings and we adopt them.

¶51 Attorney Strouse contends that this is not enough and proceeds to outline a number of additional factual findings he thinks the referee should have made.  He reminds the court that the "testimony, documentation, and argument the parties presented to Referee Ferguson was substantial and hotly contested in many respects."  He claims that Referee Ferguson failed to make necessary credibility determinations or to include specific findings of fact to support his conclusions of law.  He suggests that Referee Ferguson's finding that he "did not find the testimony of Strouse to be credible" is somehow inadequate and "does not go to the merits of the parties' contested arguments."

17

¶52 From our perspective, Attorney Strouse simply disagrees with the referee's credibility determinations, as evidenced by his claim that it is "contrary to the evidence." He suggests that the referee should have made a different credibility determination. Attorney Strouse states:

> [E.J.'s] credibility must be doubted in this respect as well as others concerning the representation. First, she has a mental condition that affects memory and ability to remember the dates of events. This was demonstrated numerous times throughout the hearing. She denied meeting with Strouse on July 22, 2009, which was corroborated by Strouse's calendar and the intake questionnaire that was completed and dated by her. She could not recall the date of the meeting between [E.J. and S.J.] and Strouse on September 12, 2009, to sign the bankruptcy petition. She denied meeting with Strouse on January 20, 2009, an event listed on Strouse's calendar maintained in the normal course of business. Further, she was fixated on the adversary proceeding as the method to discharge her student loans. This is demonstrated in the fact that she brought case law with her at the initial meeting on the issue, allegedly other case law in a subsequent meeting, and in her written communications to Strouse.

(Record citations omitted.) Attorney Strouse thus claims that he is more credible than E.J. He asks the court to find Referee Ferguson's credibility determination with respect to E.J. clearly erroneous.

¶53 We reject this invitation to disregard the referee's credibility determination. The referee is the ultimate arbiter of the facts and credibility of witnesses and there is no reason to deem these findings clearly erroneous. E.J. was very forthright in her testimony about the fact that a medical condition affected her ability to recall specific details such

18

as dates, but her testimony as to the substance of what occurred was clear and bolstered by documentary evidence, including letters to Attorney Strouse. The referee's findings of fact and conclusions of law relating to this matter are substantiated by clear and convincing evidence from the record and we adopt them.

¶54 We turn to the question of appropriate discipline. The OLR sought and the referee recommends a 60-day suspension. Attorney Strouse seeks a private reprimand or, at most, a public reprimand. Attorney Strouse reasons that the matter of F.E. involved minor technical violations and that the other allegations are similarly de minimus.

¶55 Even with our decision to dismiss the alleged violation of SCR 20:8.4(c) (Count Four), the record before this court and the concept of progressive discipline support a 60-day suspension. The record here suggests that Attorney Strouse is a busy, aggressive lawyer who serves an important role in the Milwaukee legal community, providing affordable bankruptcy representation. It bears noting that Attorney Strouse successfully obtained bankruptcy discharges for all the clients at issue in this proceeding. We also accept and acknowledge the mitigating fact that Attorney Strouse has taken steps to establish better written fee communications in his office. However, the record before us also reveals a persistent pattern of failure to abide by the requirements of our rules of professional conduct. Attorney Strouse has thrice been publicly reprimanded by this court, once for conduct that also resulted in being suspended by a bankruptcy court.

19

¶56 While the misconduct committed in this matter is not identical, we observe a continuing pattern of disregard of supreme court rule requirements. Representation anticipated to exceed $1,000 requires a written fee communication. See SCR 20:1.5. Unilateral changes to fees charged to clients certainly require more than a single line on an invoice. We note, with some concern, repeated discrepancies between disclosures on bankruptcy filings and invoices submitted to clients, a factor that adds to client confusion. As the referee observed, "by failing to accept responsibility for his actions and attempting to shift the blame to others for the poor handling of these matters, Attorney Strouse demonstrates that he lacks both remorse and insight into the impact of his repeated violations on his clients and other third parties."

¶57 We acknowledge that none of the cases cited by the parties are directly on point. This is not unusual in disciplinary matters. We find In re Disciplinary Proceedings Against Kitchen, 2004 WI 83, 273 Wis. 2d 279, 682 N.W.2d 780 provides useful guidance, and ultimately, we accept the referee's recommendation for a 60-day suspension as consistent with the principles of progressive discipline.

¶58 Finally, we consider Attorney Strouse's objection to the costs of this proceeding. We consider the factors set forth in SCR 22.24(1m), which include the number of counts charged, contested, and proven; the nature of the misconduct; the level of discipline sought and recommended; cooperation with the OLR; prior discipline; and other relevant circumstances. We are not

persuaded that this scope of the appeal was enlarged due to Referee Ferguson's insufficient credibility determinations or failure to discuss the parties' arguments. Full costs are appropriate in this vigorously litigated case.

¶59 IT IS ORDERED that the license of Paul A. Strouse to practice law in Wisconsin is suspended for a period of 60 days, effective August 14, 2015.

¶60 IT IS FURTHER ORDERED that within 60 days of the date of this order, Paul A. Strouse shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $67,562.12.

¶61 IT IS FURTHER ORDERED that Paul A. Strouse shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶62 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

¶63 ANN WALSH BRADLEY, J., did not participate.