# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2023AP1032-D |

| | |
|---|---|
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Paul A. Strouse, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>    v.<br>Paul A. Strouse,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST STROUSE

| | |
|---|---|
| OPINION FILED: | February 27, 2024 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |

Per curiam.

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2023AP1032-D

STATE OF WISCONSIN : IN SUPREME COURT

In the Matter of Disciplinary Proceedings Against Paul A. Strouse, Attorney at Law:

Office of Lawyer Regulation,

      Complainant,

    v.

Paul A. Strouse,

      Respondent.

**FILED**

**FEB 27, 2024**

Samuel A. Christensen
Clerk of Supreme Court

---

ATTORNEY disciplinary proceeding. *Attorney's license revoked.*

¶1 PER CURIAM. We review Referee V.L. Bailey-Rihn's report recommending that the court declare Attorney Paul A. Strouse in default and revoke his license to practice law in Wisconsin due to professional misconduct. The referee also recommends that Attorney Strouse pay the full costs associated with this proceeding, which are $2,456.45 as of November 28, 2023.

¶2  Since  no  appeal  has  been  filed,  we  review  the referee's report pursuant to Supreme Court Rule (SCR) 22.17(2).[1] After  careful  review  of  the  matter,  we  agree  with  the  referee that,  based  on  Attorney  Strouse's  failure  to  answer  the complaint  filed  by  the  Office  of  Lawyer  Regulation  (OLR),  or otherwise  appear  in  the  proceeding,  Attorney  Strouse  is  in default.  We also conclude that revocation of Attorney Strouse's license  is  an  appropriate  sanction  for  his  professional misconduct.  Finally,  we  agree  with  the  referee  that  Attorney Strouse should be assessed the full costs of this proceeding.

¶3  Attorney  Strouse  was  admitted  to  practice  law  in Wisconsin in 1991.  The most recent address he furnished to the State Bar of Wisconsin is in Milwaukee, Wisconsin.

¶4  Attorney  Strouse's  disciplinary  history  consists  of three public reprimands and a suspension.  In 2010 he received a public  reprimand  for  misconduct  that  included  failing  to  keep clients  reasonably  informed  of  the  status  of  their  cases; failing to respond to a client's requests for information; and falsifying  a  bankruptcy  discharge  order  and  failing  to  clarify

---

[1] SCR 22.17(2) provides:  "If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline.  The court, on its own motion, may order the parties to file briefs in the matter."

the origin of the falsified document when asked by the court. Public Reprimand of Paul A. Strouse, 2010-2.[2]

¶5  In 2011 Attorney Strouse received a second public reprimand for his conduct in a bankruptcy matter which included a lack of diligence; failure to keep a client reasonably informed of the status of the case; failing to respond to the client's requests for information; and failing to explain a matter to the extent necessary for the client to make informed decisions.  Public Reprimand of Paul A. Strouse, 2011-5.[3]

¶6  In 2015 Attorney Strouse received a third public reprimand for practicing law while his license was suspended for ten days due to noncompliance with  the continuing legal education requirement and failing to disclose to the Wisconsin Board of Bar Examiners on his reinstatement petition that he had filed two bankruptcy petitions during the period of his suspension.  Public Reprimand of Paul A. Strouse, 2015-6.[4]

¶7  Attorney Strouse also received a 60-day suspension in 2015 for his conduct in four bankruptcy matters.  The seven counts of misconduct for which he was suspended included failing

---

[2] Electronic copy available at https://compendium.wicourts.gov/app/0f7e60648c388d3d3b4f303b074b786528431d8c.continue?action=detail&detailOffset=9.

[3] Electronic copy available at https://compendium.wicourts.gov/app/5c5b474d6f7527508222444b54604d333d722245.continue?action=detail&detailOffset=15.

[4] Electronic copy available at https://compendium.wicourts.gov/app/35634b8a622960396f0d5e37813c2b613c1c1b34.continue?action=detail&detailOffset=8.

to provide a receipt for or properly safeguard property of a client or third person; failing to communicate the scope and basis for fees; failing to consult with a client regarding the means by which objectives of the representation were to be pursued; failing to explain matters sufficiently to enable a client to make informed decisions regarding the representation; and failing to respond to a client's requests for information. In re Disciplinary Proceedings Against Strouse, 2015 WI 83, 364 Wis. 2d 314, 868 N.W.2d 163.

¶8 On June 12, 2023, OLR filed a complaint against Attorney Strouse alleging nine counts of misconduct. The first three counts arose out of his use of another attorney's notary stamp and his misrepresentations to a court.

¶9 In 2014 the Wisconsin Department of Financial Institutions revoked Attorney Strouse's notary commission, which he had held since 1992. The revocation was based on the administrative suspension of Attorney Strouse's law license due to his failure to comply with mandatory continuing legal education reporting requirements. Attorney Strouse has not held a notary commission since 2014.

¶10 Between approximately January 2017 and October 2020, Attorney Thomas R. Napierala's firm, Napierala Law Offices, LLC, shared office space in Milwaukee, Wisconsin with Attorney Strouse's firm. During the time they shared office space, Attorney Napierala, who held a valid notary commission, often notarized documents for Attorney Strouse which related to the representation of clients for both firms.

4

¶11 In approximately October 2020, Attorneys Strouse and Napierala ended their office sharing arrangement and moved their firms to separate office locations. Following the move, Attorney Napierala could not locate his notary stamp. During OLR's investigation, Attorney Strouse stated that during the move from the shared office space, Attorney Napierala's notary stamp had been inadvertently packed with Attorney Strouse's firm's property and was located when the items were unpacked at Attorney Strouse's new office.

¶12 Attorney Strouse had possession of Attorney Napierala's notary stamp no later than November 9, 2020. Between November 9 and December 6, 2020, Attorney Strouse used Attorney Napierala's notary stamp to affix Attorney Napierala's notary seal on two affidavits without Attorney Napierala's authorization or knowledge. In addition, Attorney Strouse affixed or caused his nonlawyer staff to affix Attorney Napierala's electronic signature as the notary on the two affidavits without Attorney Napierala's authorization or knowledge.

¶13 On November 9, 2020, Attorney Strouse filed or caused his nonlawyer staff to file one of the affidavits with the United States Bankruptcy Court for the Eastern District of Wisconsin (Bankruptcy Court). On December 6, 2020, Attorney Strouse filed or caused his nonlawyer staff to file one of the affidavits with the Bankruptcy Court in a second case.

¶14 Between December 10, 2020 and January 8, 2021, Attorney Napierala communicated with Attorney Strouse in an

5

effort to locate and retrieve Attorney Napierala's notary stamp. Attorney Strouse denied having possession of the stamp.

¶15 On approximately December 10, 2020, Thomas D. Vaitys, an attorney whose Wisconsin law license had been revoked and who had access to Attorney Strouse's new office space, informed Attorney Napierala that Vaitys had found a notary stamp in Attorney Strouse's new office space.

¶16 On December 16, 2020, Attorney Napierala emailed Attorney Strouse asking him to send the notary stamp to him as soon as possible. On December 18, 2020, Attorney Strouse replied to the email saying, "I do not have your notary seal." Attorney Napierala responded by informing Attorney Strouse that Vaitys had told Attorney Napierala that Attorney Strouse had the notary stamp. Attorney Strouse responded, "Well then, you know who has it."

¶17 Between December 18 and 21, 2020, Attorney Napierala attempted to make arrangements with Attorney Strouse to pick up the notary stamp or to have someone deliver it to Attorney Napierala.

¶18 On December 21, 2020, Attorney Strouse emailed Attorney Napierala saying, "I do not have your notary seal . . . if [Vaitys] has it, then bring it up with him."

¶19 Between January 3 and 5, 2021, Attorney Strouse affixed Attorney Napierala's notary seal and affixed or caused his nonlawyer staff to affix Attorney Napierala's electronic signature as the notary on three additional affidavits without Attorney Napierala's authorization or knowledge. Attorney

6

Strouse filed or caused his nonlawyer staff to file the affidavits with the Bankruptcy Court.

¶20 On January 8, 2021, Attorney Napierala emailed Vaitys and copied Attorney Strouse, saying, "I still need to obtain my notary seal and I will come and retrieve it." Attorney Strouse did not return the notary stamp to Attorney Napierala.

¶21 Between February 4, 2021 and March 3, 2021, Attorney Strouse affixed Attorney Napierala's notary seal on 13 additional affidavits without Attorney Napierala's authorization or knowledge. Attorney Strouse also affixed or caused his nonlawyer staff to affix Attorney Napierala's electronic signature on the 13 affidavits without Attorney Napierala's authorization or knowledge, and Attorney Strouse filed or caused his nonlawyer staff to file the 13 affidavits with the Bankruptcy Court.

¶22 On or about March 3, 2021, the Bankruptcy Court's Clerk's Office contacted Attorney Napierala regarding his purported notarization of the affidavit filed that day in one of the cases. On March 4, 2021, Attorney Napierala emailed Attorney Strouse about the Bankruptcy Court's contact regarding the affidavit. Attorney Napierala advised Attorney Strouse that Attorney Napierala's notary seal and electronic signature appeared on a document filed on March 3, 2021 and that Attorney Napierala had not notarized anything that day. Attorney Napierala instructed Attorney Strouse to contact the Bankruptcy Court to fix the problem, and he told Attorney Strouse that he would pick up the notary seal.

¶23 On March 4, 2021, Attorney Napierala sent a letter to the Bankruptcy Court advising that he had not notarized the affidavit in question that had been filed by Attorney Strouse. Attorney Napierala subsequently sent the Bankruptcy Court similar letters regarding affidavits filed on March 3, 2021 in other cases.

¶24 On March 8, 2021, Attorney Napierala went to Attorney Strouse's new office, and the nonlawyer staff returned Attorney Napierala's notary stamp to him.

¶25 On March 1, 2021, Judge Beth E. Hanan issued an order to show cause requiring Attorney Strouse to file a written response explaining why the court should not strike the debtors' motion to reopen due to an inaccurate affidavit of service. Attorney Strouse responded to the order to show cause on March 17, 2021, saying he had an arrangement with Attorney Napierala in which Attorney Napierala would routinely visit Attorney Strouse's office to sign affidavits for various Bankruptcy Court cases. Attorney Strouse stated that his "office manager saw that the affidavits were already pre-stamped and filed the affidavits [in one case] before Attorney Napierala arrived to sign them" and that Attorney Napierala's signature was affixed electronically. Attorney Strouse claimed this was a mistake and had occurred in multiple cases.

¶26 On March 17, 2021, Judge Katherine Perhach issued an order to show cause requiring Attorney Strouse to appear at a hearing on March 23, 2021 to explain why the court should not strike the debtors' motion due to the inaccurate affidavit filed

8

in one case, and to explain in writing why Attorney Napierala's signature and notary stamp appeared on the affidavit.

¶27 On March 23, 2021, Attorney Strouse filed a letter responding to Judge Perhach's order to show cause in which he provided the same explanation that he had given to Judge Hanan. That same day, Judge Perhach conducted a hearing on the order to show cause and questioned Attorney Strouse about the affidavits. Attorney Strouse said he had an arrangement with Attorney Napierala whereby Attorney Napierala would visit Attorney Strouse's office to sign affidavits for Bankruptcy Court cases. Attorney Strouse said that Attorney Napierala would come to Attorney Strouse's new office to sign and date affidavits to be filed with the court. Attorney Strouse acknowledged that the affidavits filed on March 3, 2021 had not been signed by Attorney Napierala and that Attorney Napierala had not authorized affixing his electronic signature to the affidavits. Attorney Strouse characterized the filing of the affidavits as a mistake by his nonlawyer staff. He claimed that the affidavits filed on March 3, 2021 were the only ones he filed which had Attorney Napierala's notary stamp and signature without Attorney Napierala's authorization or knowledge. Attorney Strouse also told Judge Perhach that the cases in which affidavits were filed on March 3, 2021 were the only ones in which he filed an affidavit that was not authorized by the notary to include the notary stamp or signature on the affidavit.

¶28 On May 21, 2021, Attorney Napierala signed a Declaration denying the existence of any arrangement as

described by Attorney Strouse in his written responses to the court and during the March 23, 2021 hearing.

¶29 On June 8, 2021, counsel for the United States Trustee sent Attorney Strouse a letter inquiring as to whether he had filed any other affidavits containing improper notarizations or notary signatures between November 1, 2020 and March 3, 2021. Attorney Strouse responded on June 27, 2021 and identified 11 additional affidavits he had filed with improper notary stamps or notary signatures. He failed to disclose two additional affidavits which also contained improper notary stamps or signatures.

¶30 On August 27, 2021, counsel for the United States Trustee filed a motion for sanctions against Attorney Strouse in one of the cases pursuant to 11 U.S.C. § § 105 and 526 and Local Rule Bankr. P. 9029(f).

¶31 On November 18, 2021, Attorney Strouse entered into an amended stipulation with the United States Trustee to resolve the motion for sanctions. Attorney Strouse stipulated that, without Attorney Napierala's authorization or knowledge, he had retained possession of Attorney Napierala's notary stamp from October 31, 2020 through March 8, 2021 and had used the notary stamp and affixed Attorney Napierala's signature on 18 affidavits filed with the Bankruptcy Court. Attorney Strouse further stipulated to making a false representation and false verbal and written representations to Judge Perhach. Attorney Strouse acknowledged that his conduct violated 11 U.S.C. § 526(a)(2).

¶32 On December 23, 2021, the Bankruptcy Court entered an order approving the amended stipulation and suspending Attorney Strouse's practice before the Bankruptcy Court for a period of not less than one year, effective January 1, 2022. The Bankruptcy Court also imposed conditions on Attorney Strouse's practice before the court in the event he resumed practice following the suspension.

¶33 OLR's complaint alleged the following counts of misconduct with respect to Attorney Strouse's use of Attorney Napierala's notary stamp and his practice before the Bankruptcy Court:

> Count One: By retaining [Attorney] Napierala's notary stamp without [Attorney] Napierala's permission; by using [Attorney] Napierala's notary stamp to affix [Attorney] Napierala's notary seal to documents without [Attorney] Napierala's authorization or knowledge; by affixing or causing his nonlawyer staff to affix [Attorney] Napierala's signature to documents as the notary without [Attorney] Napierala's authorization or knowledge; by misrepresenting to [Attorney] Napierala that he did not have possession of [Attorney] Napierala's notary stamp; and by failing to disclose to the United States Trustee all of the affidavits that [Attorney] Strouse had filed with false notarizations in the Bankruptcy Court, [Attorney] Strouse, in each instance, violated SCR 20:8.4(c).[5]

> Count Two: By filing or causing his nonlawyer staff to file at least 18 affidavits with the Bankruptcy Court containing false statements that each affidavit had been sworn before [Attorney] Napierala and that [Attorney] Napierala had affixed his notary stamp and

---

[5] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

11

signature, [Attorney] Strouse, in each instance, violated 11 U.S.C. § 526(a)(2) and SCR 20:3.4(c).[6]

Count Three: By misrepresenting to the Bankruptcy Court that [Attorney] Strouse had an arrangement with [Attorney] Napierala from October 31, 2020 to March 3, 2021 for [Attorney] Napierala to provide notarial services and that [Attorney] Napierala regularly came to [Attorney] Strouse's new office to notarize documents; that the affidavits [Attorney] Strouse filed with the Bankruptcy Court on March 3, 2021 had been pre-stamped with [Attorney] Napierala's notary stamp and his signature was electronically affixed as part of the arrangement; that the affidavits filed on March 3, 2021 were filed in error by [Attorney] Strouse's nonlawyer staff who thought that [Attorney] Napierala had notarized the affidavits filed on March 3, 2021; and that the affidavits filed on March 3, 2021 by [Attorney] Strouse were the only ones to be filed bearing [Attorney] Napierala's notary stamp and signature without [Attorney] Napierala's authorization or knowledge, [Attorney] Strouse, in each instance, violated SCR 20:3.3(a)(1).[7]

¶34 OLR's complaint against Attorney Strouse also alleged three counts of misconduct arising out of his representation of R.C., who hired Attorney Strouse in September 2019 to represent her regarding claims against her former employer.

¶35 On June 9, 2020, Attorney Strouse timely filed R.C.'s charges of discrimination with the Equal Employment Opportunity Commission (EEOC). On February 4, 2021, the EEOC issued R.C. a

---

[6] SCR 20:3.4(c) provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[7] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

notice of right to sue her former employer.  R.C. received the notice on February 4, 2021 and had 90 days, or until May 4, 2021, to file a complaint with the court.

¶36  On May 3, 2021, Attorney Strouse timely filed a complaint in United States District Court for the Eastern District of Wisconsin against R.C.'s former employer alleging that the employer had discriminated and retaliated against R.C. in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(1) and (3), as amended by the Civil Rights Act of 1991 (Title VII).

¶37  After filing R.C.'s complaint on May 3, 2021, Attorney Strouse failed to timely serve the defendant employer.

¶38  On September 23, 2021, Attorney Strouse filed a notice of voluntary dismissal.  The court dismissed the case the same day.  Attorney Strouse failed to obtain R.C.'s permission to file the notice of voluntary dismissal.  Attorney Strouse incorrectly believed that R.C. had until September 9, 2022 to refile the case, but the statute of limitations on R.C.'s claims expired on May 4, 2021.

¶39  Attorney Strouse acknowledged that personal and health problems impacted his representation of R.C.  No later than April 26, 2021, Attorney Strouse asserted that his representation of another client was also materially impaired by his personal and health issues.  Attorney Strouse did not notify R.C. that his personal or health problems were impacting his representation of her, nor did he file a motion to withdraw from the representation.

13

¶40 OLR's complaint alleged the following counts of misconduct with respect to Attorney Strouse's representation of R.C.:

> Count Four: By failing to act with reasonable diligence and promptness in furtherance of [R.C.'s] interests related to her Title VII claims, [Attorney] Strouse violated SCR 20:1.3.[8]
>
> Count Five: By failing to provide competent representation to [R.C.], including by failing to take reasonable steps before filing a notice of voluntary dismissal to research and understand the effect a [voluntary] dismissal could have on her claims, [Attorney] Strouse violated SCR 20:1.1.[9]
>
> Count Six: By failing to file a motion to withdraw from his representation of [R.C.] when his personal and health concerns were impairing his ability to represent her, [Attorney] Strouse violated SCR 20:1.16(a)(2).[10]

¶41 The final three counts of misconduct alleged in OLR's complaint arose out of Attorney Strouse's representation of J.H. and Attorney Strouse's association with Thomas D. Vaitys. Vaitys' license to practice law in Wisconsin was suspended in October 2018 due to his failure to pay State Bar dues or file a

---

[8] SCR 20:1.3 provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

[9] SCR 20:1.1 provides: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[10] SCR 20:1.16(a)(2) provides: "Except as stated in par. (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent."

14

trust account certification certificate. Vaitys' license was not reinstated. On August 22, 2019, this court revoked Vaitys' license to practice law in Wisconsin due to misconduct in unrelated matters. In re Disciplinary Proceedings Against Vaitys, 2019 WI 85, 388 Wis. 2d 259, 932 N.W.2d 400. Vaitys will not be eligible to file a petition for reinstatement of his law license until August 22, 2024. See SCR 22.29(2).

¶42 Attorney Strouse knew that Vaitys' license to practice law was suspended or revoked.

¶43 Beginning in late 2018 or early 2019, Attorney Strouse provided office space, office equipment, and other assistance to two entities with which Vaitys was associated, Justice Wisconsin, Inc. and Third Ward Consultants, Inc. Attorney Napierala and Attorney Strouse each paid Third Ward $750 every two weeks for services provided by Vaitys. After Attorneys Strouse and Napierala severed their office sharing arrangement in October of 2020, Attorney Strouse began paying Third Ward $3,000 a month for services rendered by Vaitys.

¶44 Attorney Strouse has admitted that Vaitys, either directly or through Third Ward, engaged in law work activities for Attorney Strouse's firm that are customarily performed by paralegal personnel, including legal research, interviewing clients, preparing discovery responses, and assisting in the preparation of complaints, motions, and other pleadings. Vaitys occasionally met alone with clients, especially when Attorneys Strouse and Napierala were unavailable.

15

¶45  Attorney Strouse provided Vaitys with access to one or more of his firm's email accounts.  Vaitys responded to emails from Attorney Strouse's firm's email account on behalf of Attorney Strouse or the firm, without identifying himself as the drafter or sender of the email.

¶46  In an email exchange from April 2021, Attorney Napierala responded to an email that appeared to have been sent from Attorney Strouse by asking whether the email had been sent by "T" or "P," meaning Tom Vaitys or Paul Strouse.

¶47  Vaitys drafted all of the complaints Attorney Strouse filed on behalf of clients alleging violations of the Fair Credit Reporting Act.  Vaitys saved the complaints on his computer and not on a computer networked with the Strouse firm's computers.

¶48  On September 19, 2019, J.H. hired Attorney Strouse to represent him in a civil case J.H. had filed pro se in the United States District Court for the Eastern District of Wisconsin.  The suit was against the City of Racine, the Racine Police Department, and twelve individual Police Department employees.  J.H. met with Attorney Strouse and Vaitys about the case every three to four months.  J.H. believed that Vaitys was an attorney working on his case with Attorney Strouse.

¶49  Attorney Strouse never mentioned to J.H. that Vaitys' license to practice law was suspended or revoked.  Attorney Strouse was not aware of how Vaitys identified himself to any of Attorney Strouse's clients, and Attorney Strouse did not recall "ever having to explain to a client Mr. Vaitys' title or role."

16

¶50 J.H. also attended meetings with Vaitys alone, in which Vaitys provided legal advice to J.H. and engaged in substantive discussions of evidence, claims, and legal issues related to J.H.'s case. On one occasion, Vaitys met with J.H. to review all of J.H.'s exhibits and evidence, including search warrants, affidavits, and video footage. Vaitys told J.H. that J.H. had suffered an unreasonable search and seizure under the Fourth Amendment and that the police officers' actions were unreasonable based on their use of flash grenades when executing the search warrant.

¶51 Vaitys primarily drafted J.H.'s first and second amended complaints and worked with J.H. to revise and finalize the first amended complaint.

¶52 During the time that Attorney Strouse represented J.H., Attorney Strouse often fell asleep in meetings or slept in his office during the day. If Vaitys was also present for a meeting, he would continue the meeting with J.H. by himself.

¶53 J.H. often had to call or email Attorney Strouse several times before he would get a response. When J.H. went to the office to meet with Attorney Strouse, he would often end up meeting with Vaitys or a nonlawyer staff member who was working with Attorney Strouse.

¶54 After a September 2021 scheduling conference in J.H.'s case, Attorney Strouse failed to respond or have any staff respond to calls and emails from J.H. asking for information about the case. Attorney Strouse has admitted that he failed to

17

respond to J.H.'s requests for information and to take other actions on J.H.'s behalf.

¶55 On January 28, 2022, J.H. filed a document with the court in which he asserted that Attorney Strouse had "become non-communicative" with J.H.; had failed to respond to J.H.'s attempts to contact Attorney Strouse; and had refused to comply with J.H.'s reasonable requests for information related to his case.

¶56 On January 28, 2022, Attorney Strouse filed a motion to withdraw from representing J.H. In the motion, Attorney Strouse cited SCR 20:1.16(a)(2) and asserted that his physical and mental condition had materially impaired his representation of J.H. and that he was no longer capable of representing J.H. Attorney Strouse referred to a number of personal, medical, and financial difficulties that occurred between December 2019 and January 28, 2022, including that he was being treated for severe depression and anxiety.

¶57 The court granted Attorney Strouse's motion to withdraw on February 9, 2022.

¶58 OLR's complaint alleged the following counts of misconduct with respect to Attorney Strouse's representation of J.H. and his association with Vaitys:

Count Seven: By assisting, facilitating, or allowing Thomas Vaitys to practice law and/or perform law work activities at a time when Vaitys' license to practice law was suspended or revoked, [Attorney] Strouse

18

violated SCR 20:8.4(a),[11] via SCR 22.26(2)[12] and/or SCR 20:5.5(a)(2).[13]

Count Eight: By failing to respond to [J.H.'s] reasonable requests for information, [Attorney] Strouse violated SCR 20:1.4(a)(4).[14]

Count Nine: If [Attorney] Strouse's mental or physical condition materially impaired his ability to represent [J.H.], by failing to timely file a motion to withdraw from his representation of [J.H.], [Attorney] Strouse violated SCR 20:1.16(a)(2).

¶59 Attorney Strouse did not file an answer to OLR's complaint. OLR filed a motion for default judgment on August 29, 2023. Attorney Strouse failed to respond to the motion. The referee requested input on a hearing date for the default judgment motion. Attorney Strouse indicated, via email, that he was available on October 9, 2023. The referee set a briefing schedule on the motion. Attorney Strouse failed to file a timely brief in opposition to the motion, and he failed to

---

[11] SCR 20:8.4(a) provides: "It is professional misconduct for a lawyer to violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[12] SCR 22.26(2) provides: "An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law."

[13] SCR 20:5.5(a)(2) provides: "A lawyer shall not assist another in practicing law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction."

[14] SCR 20:1.4(a)(4) provides: "A lawyer shall promptly comply with reasonable requests by the client for information."

19

appear at the October 9, 2023 hearing. The referee recommended that this court find Attorney Strouse in default. The referee asked the parties for briefing on the appropriate sanction for Attorney Strouse's misconduct. OLR submitted a sanctions brief. Attorney Strouse did not submit a sanctions brief.

¶60 On November 13, 2023, the referee issued a report and recommendation reiterating that Attorney Strouse should be declared in default; finding that the allegations in OLR's complaint were true; and finding that the OLR had met its burden of proof as to all counts of misconduct alleged in the complaint.

¶61 As to the appropriate sanction, the referee agreed with OLR that Attorney Strouse's misconduct warrants the most severe sanction available, the revocation of Attorney Strouse's license to practice law. In making this recommendation, the referee noted that the factors to be considered in imposing discipline include the seriousness, nature and extent of the misconduct; the level of discipline needed to protect the public, the courts and the legal system from repetition of the attorney's misconduct; the need to impress upon the attorney the seriousness of the misconduct; and the need to deter other attorneys from committing similar conduct. The referee explained:

> From failing to obtain proper notarized affidavits, to then lying about the circumstances about the affidavits, to not informing a client that their claim has been dismissed, Strouse has not provided the level of conduct necessary to be an attorney licensed in this state. Strouse also willingly allowed a

disbarred attorney to practice law in direct contradiction of the relevant statutes prohibiting such conduct and failed to keep a client informed of his case. Strouse also has an extensive prior record of disciplinary proceedings including three public reprimands and a 60-day license suspension.

In short, Strouse has failed to conform to his obligations to clients, tribunals and OLR. After three public reprimands and one 60-day suspension for much the same type of behavior, Strouse has not changed his behavior.

¶62 The referee went on to say that although the case might present some mitigating factors based on Attorney Strouse's alleged mental or physical disability, Attorney Strouse failed to prove a causal connection between the misconduct and his alleged medical condition, so the referee was unable to determine if that factor would support a reduction in the severity of the sanction. In re Disciplinary Proceedings Against Davig, 2018 WI 114, ¶40, 385 Wis. 2d 49, 922 N.W.2d 498. The referee found that Attorney Strouse's overwhelming lack of candor to the Bankruptcy Court and OLR, along with his previous discipline, weighed heavily in favor of revocation. The referee also found that it was appropriate for Attorney Strouse to be assessed the full costs of the proceeding.

¶63 Attorney Strouse did not appeal from the referee's report and recommendation, so we proceed with our review of the matter pursuant to SCR 22.17(2). We review a referee's findings of fact subject to the clearly erroneous standard. In re Disciplinary Proceedings Against Inglimo, 2007 WI 126, ¶5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law de novo. Id. We determine the appropriate level of

21

discipline independent of the referee's recommendation. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶64 We agree with the referee that Attorney Strouse should be declared in default. In addition, we find that the referee properly relied on the allegations of the complaint, which were deemed admitted by Attorney Strouse's failure to answer. We thus agree with the referee that the factual allegations of OLR's complaint may be taken as true and that they prove by clear, satisfactory, and convincing evidence that Attorney Strouse committed all of the counts of misconduct alleged in the complaint.

¶65 We also agree with the referee that given the nature of the misconduct at issue, as well as Attorney Strouse's prior disciplinary record, the appropriate discipline in this case is to revoke Attorney Strouse's license to practice law in Wisconsin. Attorney Strouse's misconduct is disturbing. Knowing that his notary commission had been revoked, he appropriated Attorney Napierala's notary seal and, for a period of several months, applied the notary seal and affixed Attorney Napierala's electronic signature to multiple documents and filed the documents with the Bankruptcy Court. When confronted by Attorney Napierala, Attorney Strouse lied and said he did not have the notary seal. When confronted by the Bankruptcy Court, he lied again, concocted a bogus story, and claimed Attorney Napierala had in fact notarized the documents in question.

22

¶66 Attorney Strouse failed to provide competent representation to R.C. and authorized the voluntary dismissal of her claim without her permission and without understanding that the claim could not be re-filed because the statute of limitations had already run.

¶67 Attorney Strouse's association with Vaitys was also highly problematic. Attorney Strouse knew that Vaitys' license to practice law had been revoked, yet he allowed Vaitys to perform legal work, including drafting pleadings and conducting independent meetings with Attorney Strouse's clients.

¶68 "Revocation of an attorney's license to practice law is the most severe sanction this court can impose. It is reserved for the most egregious cases." In re Disciplinary Proceedings Against Cooper, 2013 WI 97, ¶34, 351 Wis. 2d 350, 839 N.W.2d 857. This case fits that description. Although no two disciplinary cases are precisely the same, we have previously revoked attorneys' licenses for somewhat analogous conduct. For example, in In re Disciplinary Proceedings Against Petros, 2021 WI 55, 397 Wis. 2d 447, 960 N.W.2d 426, we revoked the license of an attorney who had engaged in sixteen counts of misconduct that included knowingly making a false statement of fact or law to a tribunal and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Like Attorney Strouse, Attorney Petros had been the subject of several earlier disciplinary proceedings. As we said in Petros, Attorney Strouse "appears uninterested in honest, responsible advocacy, and tends to dodge . . . when called to account for his actions.

23

Our profession has no place for persons who cannot be counted on to follow the basic standards and procedures set forth in our ethical rules." Petros, 2021 WI 55, ¶29. Any sanction short of revocation would unduly depreciate the gravity of Attorney Strouse's misconduct. We also agree with the referee that, as is our usual custom, Attorney Strouse should be assessed the full costs of this proceeding.

¶69 IT IS ORDERED that the license of Paul A. Strouse to practice law in Wisconsin is revoked, effective April 2, 2024.

¶70 IT IS FURTHER ORDERED that within 60 days of the date of this order, Paul A. Strouse shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $2,456.45.

¶71 IT IS FURTHER ORDERED that Paul A. Strouse shall comply with the requirements of SCR 22.26 pertaining to the duties of a person whose license to practice law in Wisconsin has been revoked.

¶72 ANNETTE KINGSLAND ZIEGLER, C.J. *(concurring).* I concur in the court's order revoking Attorney Strouse's license to practice law in Wisconsin. I write separately to point out that in Wisconsin the "revocation" of an attorney's law license is not truly revocation because the attorney may petition for readmittance after a period of five years. See SCR 22.29(2). I believe that when it comes to lawyer discipline, courts should say what they mean and mean what they say. We should not be creating false perceptions to both the public and to the lawyer seeking to practice law again. See In re Disciplinary Proceedings Against Moodie, 2020 WI 39, 391 Wis. 2d 196, 942 N.W.2d 302 (Ziegler, J., dissenting). And, as I stated in my dissent to this court's order denying Rule Petition 19-10, In the Matter of Amending Supreme Court Rules Pertaining to Permanent Revocation of a License to Practice Law in Attorney Disciplinary Proceedings, I believe there may be rare and unusual cases that would warrant the permanent revocation of an attorney's license to practice law. See S. Ct. Order 19-10 (issued Dec. 18, 2019) (Ziegler, J., dissenting).

¶73 I am authorized to state that Justices REBECCA GRASSL BRADLEY, BRIAN HAGEDORN, and JILL J. KAROFSKY join this concurrence.

1

1